# Doud *v.* Delaware, Susquehanna & Schuylkill Railroad Company, Appellant.

*Negligence—Railroads—Stop, look and listen.*

In an action against a railroad company by the conductor of a street car to recover damages for personal injuries sustained at a grade crossing, the evidence showed that the crossing was near a station behind which a car, while taking on passengers, would be hidden from an engineer approaching from the east. The engine which struck the plaintiff was running from the east backward without cars. It did not sound a whistle or bell, and did not display a light towards the crossing. The night was foggy and dark. The testimony for the plaintiff tended to show that when his car stopped at the crossing he went over to the railroad track, looked and listened, and neither hearing nor seeing an engine, signaled his car to come forward. When the car came to him and the front vestibule had passed him, he turned to get on. This he did as the rear platform was about going on the track, and he was almost immediately struck by the engine. There was evidence that when the front vestibule got to the track, the engine was in sight some sixty or seventy feet away. The motorman said it was twenty or thirty feet from the car when he first saw it. *Held* that a judgment and verdict for plaintiff should be sustained.

Argued April 17, 1902. Appeal, No. 49, Jan. T., 1902, by defendant, from judgment of C. P. Luzerne Co., May T., 1897, No. 493, on verdict for plaintiff in case of Patrick Doud *v.* Delaware, Susquehanna & Schuylkill Railroad Company. Before McCollum, C. J., Mitchell, Dean, Brown and Mestrezat, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before McClure, P. J., specially presiding.

At the trial it appeared that the plaintiff was injured at a grade crossing at Hazelton junction on defendant's road. The accident occurred at about six o'clock in the evening. The circumstances of the accident are detailed at length in the opinion of McClure, P. J., specially presiding, discharging a rule for judgment non obstante veredicto.

Verdict and judgment for plaintiff for $5,000.

The opinion of the court was as follows:

We have but one question to consider and that is whether

the evidence presents a case of contributory negligence on the part of Doud in attempting to cross the defendant's tracks, so clear and unmistakable that, notwithstanding the verdict of the jury, the court must so pronounce it as a matter of law and enter judgment for the defendant. This under the rule adopted by our Supreme Court, that one who is struck by a moving train, which was plainly visible from the point he occupied when it became his duty to stop, look and listen, must be conclusively presumed to have disregarded that rule of law and of common prudence, and to have gone negligently into an obvious danger. The doctrine of legal presumption was advanced to this point because it is impossible for a man in possession of his faculties to stop, look and listen for an approaching train, that is in plain view, and close at hand, and be unable to see or hear it: Carroll v. Penna. R. R. Co., 12 W. N. C. 348 ; Penna. R. R. Co. v. Mooney, 126 Pa. 244 ; Marland v. Pittsburg, etc., R. R. Co., 123 Pa. 487 ; Sheehan v. P. & R. R. R. Co., 166 Pa. 354; Holden v. Penna. R. R. Co., 169 Pa. 1; Hovenden v. Penna. R. R. Co., 180 Pa. 244.

The difficulty with this as with all other rules is not so much to know it, as it is to make proper application of it to the various cases constantly coming up for adjudication. While the courts show no disposition to relax the rule, it has been held to apply only to cases free from doubt and uncertainty, otherwise the question of contributory negligence must go to the jury: McNeal v. Pittsburg, etc., Ry. Co., 131 Pa. 184; McCusker v. Penna. R. R. Co., 198 Pa. 540 ; Bard v. P & R. R. Co., 199 Pa. 94.

After a thorough review of the testimony we are satisfied that whether Doud was negligent in attempting the crossing under all the circumstances was a question of fact for the jury. The two most recent cases above referred to confirm our opinion. As said in Bard v. Railway: " In determining the negligence of a plaintiff in a case of this character, it is often necessary not only to consider her conduct on the occasion but also that of the defendant. This was at the crossing of a street where both parties had the right to be. Each party had also the right to act with the belief that the other would exercise his right at the place in the manner and way his duty required him to do. The duty of the defendant company's employees in

charge of the locomotive was that of care required at a grade crossing, and to run the locomotive at a rate of speed not dangerous to pedestrians exercising due precaution, who might have occasion to cross the tracks, either in daylight or darkness, with a clear atmosphere or a dense and foggy one. The plaintiff was justified in believing that the defendant's employees would perform their duty in this respect, and she could act on such belief without any imputation of negligence." In light of the verdict we must now assume that the company was negligent in running its engine on the evening of the accident. That the crossing was a dangerous one, owing to the location of the station close to the intersection of the two roads and behind which a car, while taking on passengers, would be hidden from an engineer approaching from the east, must have been known to the owners of both roads. That it was a wet, foggy, dark night was in evidence. It was also shown that the engine was running light on a down grade. Now Doud had a right to assume that due notice would be given of the approach of the engine by whistle and bell and, if necessity required the engine to run backwards, that a sufficient light would be displayed to warn him of its coming. The jury by their verdict have said that these warnings were not given. When all these circumstances are considered in connection with the action of Doud, must he be conclusively presumed to have been negligent in attempting to cross the tracks of the defendant company? It is argued that he was grossly negligent because the engine was seen by the motorman and Dr. Koons, who were in the car when they came to the crossing, and it was right at his shoulder when he stepped upon the car; that had he exercised the slightest care he must have heard and seen the engine bearing down upon him. While great responsibility rested upon Doud, as upon his care and vigilance depended the lives of forty or more passengers, still we think he is not so plainly chargeable with negligence as he would have been had he been a pedestrian, as in the Bard and McCusker cases, with his own safety alone to look out for and no car to engage his attention. According to his testimony he went over to the railroad track, looked and listened, and not hearing nor seeing an engine signaled his car to come forward. When the car came to him and the front vestibule had passed

him, he turned to get on. He saw a passenger on the back platform standing in his way and hallooed to him "Look out, I have to get on." The passenger made way for him, he stepped on the car as the rear platform was about going on the track, and knew nothing after that as he was almost immediately struck by the engine. There can be no doubt that he would have saved himself had he turned and looked to the eastward just before taking hold of his car and mounting the step, as at that time the tank of the engine was then close at hand. Was he bound to do this or be charged with negligence? We do not think so. Doud had a right to assume that the railroad company would do its duty and give him notice of the approach of a train in time for him to make the crossing in safety with his car, if he had before the warning signaled his motorman to come ahead, which signal was being promptly obeyed by him and the car on its way across the tracks. If, therefore, he had the right to assume that his car loaded with passengers would get across in safety, he could not be charged with negligence in attempting to cross upon it without again looking up the track for an approaching engine. If so, then no conductor can ride over a crossing on his car without being negligent, and no teamster who has gotten off his wagon to look and listen while a companion drives his horses could climb back again and go over the crossing on the wagon without laying himself open to the same charge.

There is evidence that when the front vestibule got to the track the engine was in sight some sixty or seventy feet away. The motorman said it was twenty or thirty feet from the car when he first saw it bearing down upon him. It is argued from this testimony that it is folly for Doud to say he performed his duty and did not see the engine when these men, who were not so well situated and whose business did not require them to keep a lookout, saw it coming so far away that they escaped injury and the motorman almost succeeded in getting all the passengers out of danger. But Doud had looked and listened, had given the signal and the lighted car was right upon him making the crossing at this time. He no doubt then turned his attention to the car so that he could get on and go over the crossing with it. And it is possible that at that very instant the engine hove in sight. Nothing he could

then have done would have prevented the wrecking of the car or saved the lives of his passengers. He may have been negligent in not looking for this engine, but it is not a case so clear that we must so pronounce his conduct as a matter of law.

Whether he listened is likewise a question of fact for the jury. This engine was running backwards on a down grade without a train on a wet rail in a foggy night. If plaintiff's witnesses are to be believed it moved noiselessly and the rumble of the wheels would not of itself give notice of its approach to the crossing. An examination of the decided cases will show that engines moving in this way have caused many accidents and are fruitful sources of danger to travelers upon the highways. The noise of its immediate approach would no doubt be confused with that of the car and Doud, intent upon getting on the rear platform, evidently did not hear it.

We are not unmindful of the fact that the highest degree of care devolved upon this conductor when he approached this crossing, as upon his watchfulness depended the lives of a car full of passengers, and while under the testimony the jury would have been justified in finding him negligent, as we have said, we do not think the case is so clear that the doctrine of legal presumption can be invoked to prevent his recovery.

January 11, 1902, the motion is overruled and judgment is directed to be entered on the verdict upon payment of the jury fee.

*Error assigned* was in entering judgment on the verdict.

*A. H. McClintock*, and *James L. Lenahan*, with him *S. P. Wolverton*, for appellant.

*John T. Lenahan*, with him *Edward A. Lynch*, for appellee.

PER CURIAM, June 4, 1902:

The judgment is affirmed on the opinion of the court below refusing a new trial.